IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN THE MATTER OF                          :

AWNING WINDOWS, INC.,                     :   CASE NO. 04-05802(SEK)

    DEBTOR                                :   CHAPTER 11

    ---------------------------------     :

**FILED & ENTERED**

OCT 0 5 2007

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

**OPINION AND ORDER**

Awning Windows, Inc.("Seller"), filed a "Motion Requesting Order Directing Forfeiture of Deposit". Advanced Windows MFG., Corp. ("Buyer"), sought the return of the $75,000 deposit. After an evidentiary hearing, the parties submitted the contested matter.[1] For reasons that follow, we deny Seller's motion.

## Factual Findings

In December 2005, the parties began negotiating the sale/acquisition of Debtor's business. Buyer lacked the capital needed for this purchase, so it involved private investors in these negotiations.[2] On April 7, 2006, Seller and Buyer executed

---

[1] We have jurisdiction under 28 U.S.C. §§ 1334 & 157 (b)(1). The dispute is a core matter under 28 U.S.C. § 257(b)(2)(A), as Debtor needed the earnest money to pay its creditors under the confirmed plan. Mansker v. Campbell (In re Mansker d/b/a Mount Hope Farm), 60 B.R. 803, 805 (Bankr. Mass. 1986); Cohen v. 222 Liberty Associates, (In re 222 Liberty Associates), 99 B.R. 639, 644 (Bankr. E.D.Pa. 1989).

[2] Buyer identified the investors as Mr. José González Niet and Miradero Capital Partners, acting on behalf of Puerto Rico Entrepreneurs Fund, L.P.. While the Seller's principal denied investor involvement in the negotiations, documents of record and

2

an Option Agreement (the "contract"). As relevant, the contract calls for the sale of a manufacturing plant that extrudes and paints aluminum windows and doors, for the sum of $6,000,000. The Buyer delivered $50,000, deposited in an escrow account controlled by the Seller. The contract would have expired ten days after our order approving the sale became final, or June 7, 2006. The earnest money would be applied to the purchase price at closing,

> if the Buyer exercises the Option in the manner indicated herein and purchases the property as provided herein. If the Buyer fails to exercise the Option and close on the purchase of the property in the manner and within the terms indicated herein for reasons not attributable to Buyer, including but not limited to securing adequate financing, the option deposit will be released in favor of Buyer.

(Joint Exhibit I, paragraph 5).

The contract's sixteenth paragraph reads: "This Agreement constitutes the entire agreement between the parties and may only be modified in writing, duly signed by Buyer and Seller."

In March 2006, the Buyer applied for a loan at Firstbank. It was not processed as the Buyer could not contribute funds for the down payment. The parties then agreed to extend the option term to August 30th , in exchange for Buyers paying the interest due on a loan incurred by the Debtor in favor of Westernbank.

---

credible testimony of Mr. Zoilo Méndez o/b/o Miradero Capital Partners and Mr. Héctor Reyes o/b/o of the Buyer, support this finding.

3

AW Extrusion, Inc. and Advanced Windows, Inc. represented by Mr. Héctor Reyes as president and shareholder, together with another investor, applied for a $6,376,000 loan at Banco Bilbao Vizcaya Argentaria ("BBVA",) sometime in July, 2006. On August 30th, BBVA denied the application due to the entities high level of debt, the manufacturing plant's inability to generate sufficient income from its operations to service the debt, the shareholders' and investor's lack of capital and their inability to make the down payment. (Advanced Window's Exs. 2A and 2B). The parties then extended the "Option Term" to September 30th in exchange for the Buyer depositing an additional $25,000 in escrow.

On September 19, 2006, Westernbank Puerto Rico denied Advanced Windows MFG., Corp.'s application for a $7,000,000 loan, as its income was insufficient and its working capital was deficient. (Advanced Windows' Ex. 3).

Mr. Reyes testified the Buyer applied for $7,000,000 under § 504 type loans promoted by the Small Business Administration, that included capital needed for plant and machinery improvements and start up costs.

On October 2nd , the Seller informed the Buyer that the option expired, and the $75,000 in escrow was forfeited due to the Buyer's "consecutive failures to close on agreed dates, [and because] the Debtor has no assurance as to his commitment to buy

4

the property." (Debtor's Exhibit A). The next day, the Buyer acknowledged receipt of the termination letter, and requested reimbursement of its earnest money ($75,000) under the contract's fifth paragraph, attaching copies of loan rejections issued by BBVA and Westernbank. (Joint Exhibit II).

Despite the termination letter, both parties were intent on salvaging the deal. On October 4, 2006, Miradero Capital Partners ("Miradero"), provided Mr. Reyes with a summary of the terms and conditions under which Puerto Rico Entrepeneurs Fund, L.P. would invest $1,750,000 in the Buyer. This capital investment would be utilized to partially finance the acquisition of substantially all of Seller's assets related to its operations. (Advanced Windows Ex. 2). The offer was subject, *inter alia*, to the execution of a Letter of Intent by the Buyer and the Seller drafted by Miradero. The contents of this Letter of Intent will be discussed elsewhere. The Buyer then filed an application for a $4,000,000 loan with Banco Popular de PR to help finance the purchase with its new investor. (Advanced Windows Ex. 4). Miradero, the Seller and Buyer with their respective Counsel, began a new round of negotiations. By letter dated November 8, 2006, Seller's Counsel confirmed what she perceived was the agreement resulting from these conversations: to set aside the termination of the option agreement, extend the expiration of the "original option" to December 26, 2006, adding that "if the sale

5

does not take place on or before December 20, 2006, the complete deposit will be forfeited." (Debtor's Ex. C). Counsel also reminded Seller of its obligation to pay interest due on its loan with Westernbank.

Two days later, this Counsel notified Buyer and its Counsel her "Comments to the Extension of the Option Agreement signed on April 7, 2006". However, evidence showed these comments were the Seller's request for changes to the Letter of Intent drafted by Miradero, that was part and parcel of Puerto Rico Entrepreneurs Fund, L.P.'s offer to provide a capital investment of $1.7 million to the Buyer. The comment relevant to this dispute concerned a substitution, so that,

> [l]ast sentence shall read: 'If the closing does not take place on or before December 20, 2006, the good faith deposit shall be forfeited.'"

(Advance Windows Ex. 1).

On November 21st , eleven days after receipt of Seller's proposals, the Buyer notified the Seller that it withdrew "from all consideration related to the purchase of Awning Windows assets. No adequate financing has been secured." (Joint Exhibit III). Seller renewed its request for reimbursement of the $75,000 deposit under the 5th paragraph of the contract. By E mail sent the following day, the Seller reaffirmed its position that the $75,000 deposit was forfeited. Unable to resolve the dispute, four months later the parties initiated this contested

6

matter.

## Discussion

Seller acknowledged its initial burden of showing the Buyer forfeited the earnest money.  It advanced two theories.  First, the parties negotiated and agreed to renew the contract after it expired on September 30th, with two modifications: (a) the closing must take place by December 20, 2006, or (b) the earnest money was forfeited.  Second, the Seller claims Buyer's two attempts at securing financing were inadequate. The Seller argues that the amounts in the applications were excessive, given the outstanding cash payment of $5,450,000 due at closing. Buyer applied for a $6,376,000 and a $7,000,000 loan.  Hence, the Buyer did not seek "adequate financing", thus forfeiting the earnest money pursuant to the contract.

Buyer argues it did not agree to forfeit the earnest money if the closing was not consummated by December 20th, even though it was amenable to the contract's renewal and/or the Capitales' offer with its Letter of Intent.  The Buyer also stated the Seller was aware that Capitales required Buyer and Seller to execute the Letter of Intent it had drafted. Despite negotiations amongst the three parties, an agreement was not reached.  With respect to forfeiture based on inadequate requests for financing, the Buyer claims the sums sought were required to make the business viable, as financing included capital needed for

7

improvements to the machinery and equipment and start up costs. The applications included a survey of these costs. Furthermore, the Buyer explained it switched from Firstbank to BBVA, as the active investor at that time, José González Niet, did business with BBVA. The Buyer thought this prior business relationship would improve its chances of obtaining the loan. The Buyer argued that it diligently pursued the financing, and any delays were due to documents produced by third parties such as appraisers, accountants, etc. Therefore, the Seller could not claim the Buyer breached its duty to seek adequate financing, thereby forfeiting the earnest money pursuant to the 5th paragraph of the contract.

A. Meeting of the Minds After the Contract Expired.

The Seller and its Counsel both testified the Buyer verbally agreed to renew the expired contract, and provided for the forfeiture of the earnest money as *quid pro quo* for extending its expiration to December 20, 2006. They also claimed the verbal agreement was verified in writing by the November 8th letter admitted as Seller's Exhibit C. While the contract required that all amendments be executed by the parties, in writing, the first two extensions granted for different considerations were verbal. Hence, Seller argued the Buyer was estopped by its previous acts from claiming this third verbal agreement was invalid under the 16th clause of the contract.

8

The record shows the Seller was always aware of the Buyer's need for additional capital and for financing the purchase price.[3] Hence, we find it implausible that the Buyer, whose two prior loan applications had been denied, would agree to the forfeiture in exchange for an extension of the contract's expiration date. Furthermore, the framework for the negotiations that ensued upon expiration of the contract, was created by the Capitales' October 4th offer, notified to the Buyer and the Seller. The offer states: 'Please acknowledge acceptance of the terms and conditions hereof by signing and returning to us the enclosed copy of this letter, together with a duly executed copy of the Letter of Intent."[4] (Advanced Window's Ex. 2, p.9) The offer further states:

> The investment contemplated herein is subject to:
> . . .
> (b) the negotiation and consummation of the Aluminios Transaction pursuant to documentation satisfactory to the Fund and on terms and conditions similar to those outlined in the Letter of Intent.

(Advanced Window's Ex. 2, p.10)

---

[3] Seller's principal denied this, but Mr. Zoilo Méndez, who represented Capitales, emphasized that the Seller knew about their interest, he and some engineers and accountants inspected the plant and its finances several times as part of its duty of due diligence. He also stated he participated with his attorney in negotiations that took place after Capitales submitted its Oct. 4th offer. We find his testimony credible.

[4] Even though Capitales offer states it expires on October 16th, the parties continued negotiations until at least November 21st, when the Buyer informed its decision to withdraw from all negotiations.

9

Relevant portion of the Letter of Intent's twelfth paragraph reads as follows.

> The Parties agree to negotiate in good faith the terms and conditions of the Asset Purchase Agreement until this Letter of Intent is terminated in accordance with this paragraph. Except for [certain paragraphs not relevant to the dispute] ... the parties agree that this Letter of Intent is not intended to be a binding agreement between the parties but merely an expression of their intent with regard to the proposed acquisition of the Assets by the Purchaser, and each party covenants never to contend the contrary.

(Advanced Window's Ex. 2, p.6 of the Letter of Intent). The November 10th E mail demonstrates the Seller was still suggesting changes to the Letter of Intent, albeit changes it perceived had been accepted by the Buyer. This document was never executed. Furthermore, assuming the parties had indeed agreed to the December 20th cutoff and forfeiture for non consummation, excerpts from the Letter of Intent cited above show these changes were not binding.

Under applicable non bankruptcy law, "[t]here is [no] contract unless the following requisites exist:

(1) The consent of the contracting parties.

(2) A definite object which may the subject of the contract.

(3) The cause for the obligation which may be established."

31 Laws of P.R. Ann. § 3391. The Supreme Court of Puerto Rico refers to consent "as the 'meeting' of minds, [explained by Manresa's Commentaries on the equivalent article of the Spanish Civil Code, as]:

10

> The essence of consent is the agreement of the parties
> to that which must constitute the contract, the
> acceptance of one of the offer made by the other, it is
> the concurrence mentioned by the law of the thing and
> the cause which are to constitute the contract.

González, et al. v. Fumero, 38 P.R.R. 497, 504(1928)(cit.

omitted); Producciones Tommy Muñiz, Inc. v. Comité Organizador de

Los VIII Juegos Panamericanos (COPAN), 13 PR Offic. Trans. 664,

670 (1982).

"[U]nder Puerto Rico law an agreement can be binding without

executed documentation if, *inter alia*, the parties have a

'meeting of the minds expressed through the offer and the

acceptance'" (cit. omitted) YSIEM Corp. v. Commercial Net Lease

Realty, Inc., 328 F.3d 20, 23 (1st Cir. 2003).  That proposition

might apply here, had the parties merely agreed to set final

terms without any understanding that executed documentation was

essential to the formulation of the purchase agreement, and that

the Letter of Intent was not intended to be a binding agreement.

Therefore, we conclude that: Capitales was a party to the

negotiations after September 30th, these were conducted under the

framework of the Capitales October 4th offer that was not

binding, any verbal agreements reached during the negotiations

were subject to final documentation that was never executed, so

that there was no meeting of the minds with respect to the

December 20th deadline, or the forfeiture of the earnest money.

B. Forfeiture of the Earnest Money due to the Buyer's

11

inadequate requests for financing, pursuant to the April 7, 2006 Option Agreement.

Seller has the burden of showing Buyer's applications for financing submitted to BBVA and Westernbank were inadequate. Seller urges us to conclude Buyer did not seek adequate financing since sums to be financed exceeded the cash needed to close the deal.   Seller questions the Buyer's need for cash to improve the machinery and equipment by pointing out that it had inspected the equipment, and found it acceptable.   In short, the Buyer was seeking approval of loans exceeding the cash outlay for closing the deal by some $1,500,000, while at the same time knowing the corporation needed an infusion of capital to conclude the acquisition.   Hence, the probability of loan approvals was significantly reduced.

Without a review of the complementary documents attached to these applications that were not produced, we dismiss this theory as speculative.

**WHEREFORE**, we deny Awning Windows, Inc.'s request, ordering it to deliver the $75,000 deposit to Advanced Windows MFG., Corp. forthwith.

**SO ORDERED**, in San Juan, Puerto Rico, on October 2, 2007.

SARA DE JESUS
U.S. Bankruptcy Judge